You may proceed. Thank you, Your Honor. Good morning. My name is Padraigin Browne, and I'm representing myself on this appeal. In this appeal, what is in front of the court is the question of whether or not the district court judge made the correct decision in denying my petition for attorney's fees. In that decision, the judge based his denial of the attorney's fees essentially on two basic propositions. One, that because the number amount for the settlement didn't go up, that I didn't provide any benefit to the class. And two, that because there were other objectors, that the arguments that I made were not in any way novel, and therefore, again, I was not entitled to recover the attorney's fees that were incurred. It's my position that this has the law incorrect, both has the law incorrect, states the law incorrectly, and that the facts belie the conclusions that he made. So with respect to providing a substantial benefit, although the total amount of money that was in the fund remained $8.5 million, there are several changes to the settlement, not the least of which was the ability to actually determine how much the fund was actually worth that accrued from my attorney's efforts in first objecting at the district court level and then bringing a successful appeal up to the Ninth Circuit to have the original settlement agreement overturned. And so when the judge is making a determination of whether I should be entitled to attorney's fees or a service award, he should be considering whether there was a benefit to the changes that were made besides, for example, being able to determine exactly how much the settlement was actually worth, and then there was also procedural changes that have a great deal of benefit, as is acknowledged by the settling parties, had a great deal of benefit to the class members, such as not having to go first to see whether or not the retailer would accept the expired Groupon before being able to go and make a claim against the settlement funds. And then with respect to the assertion that the arguments that were made on my behalf by my attorneys, both on the district court level and on the appeals level, that they were not unique simply because other people also objected and other people appealed, that would essentially obliviate attorney's fees for objectors because all that would have to happen is one other person comes in and makes an argument. It doesn't matter if it's the same argument. But weren't you the first person to make certain arguments? I was, Your Honor, which is what I was going to get to next. But as an initial matter, the wording in the district court order isn't saying that it's not unique because I wasn't the first person to make an argument or anything like that. He simply said that because other people objected, it was not unique. I mean, to allow for that simply means as soon as there's two objectors, nobody ever is able to get their attorney's fees. And that's, from my understanding, contrary to what the case law is in this district. So what I would be asking would be for the judge on remand to be looking at what benefits I provided, what arguments I made that were unique versus the other objectors, and taking that into consideration and determining what the appropriate remand would be. Well, you're kind of like lead objector. And so when you have a plaintiff's counsel in a class action suit, you have lead counsel that generally gets paid the most, and you've got the trail along counsel. And as a judge, you look at those and decide if they're going to get anything or how much they should get. So you're in a position really of lead objector, right? Yes, Your Honor. And despite that, despite being the first person to file an appeal brief and having counsel come and do a substantial argument in front of the Ninth Circuit, which ultimately led to the vacation of the original settlement agreement, remand, or either additional findings or to come up with a new agreement. Despite that, I was summarily denied the petition for attorney's fees. Okay, do you want to save your time? Yes, I would, Your Honor. Thank you. May it please the Court. I'm Joseph Daly for the Plaintiff's Appellees here. There are several reasons why the district court's discretionary decision not to award the objector any attorney's fees should be upheld. First and most prominently, the objector did not increase the settlement fund by one penny. It started out as an $8.5 million fund in 2012. It remained an $8.5 million fund in 2015. Counsel? Yes, Your Honor. Judge Gould with a question. So when we had this case up here before, I thought our panel asked the district court to do certain things on remand, like setting values of what was done. Yes, the Bluetooth findings. And did the district court do what we asked the district court to do? The district court made its Bluetooth findings, but with respect to the new, what I will call the 2015 settlement, it's true that the second settlement fund, which was what troubled the panel in the original journey of Groupon up here, it's true that the panel asked the district court, Judge Subraw, to make the Bluetooth findings with regard to that second settlement because it wanted to be able to put a value upon the entire overall settlement and compare that to the attorney's fees that were coming out of the overall fund. When this case went back down to the district court, by that time three years had passed, the parties, both sides, decided to excise the second settlement fund out of the overall settlement. They decided to streamline the process. Instead of making class members go back to a merchant with a voucher, they could actually get credits deposited immediately into their Groupon fund. But here's the thing. Judge Subraw still did those Bluetooth findings, and I would add, nobody has filed an appeal from that part of his order. Nobody has said that he did not make the Bluetooth findings that he was supposed to make, and you will find those Bluetooth findings. You will find him discussing Bluetooth in his final approval order of this, the 2015 settlement. Well, wasn't there like seven days later that an altered settlement was put into effect? I mean, it was really quick. Well, I think you're talking, you're referring back to the initial, and I apologize for the different terms here. There's an initial settlement that included a Cypre feature along with the second settlement. Yes. That was removed. When he and his initial final approval denied final approval and said, I can't give final approval here because of the Cypre provision, the $75,000 to these two organizations, that is correct. That was removed from the final settlement. It came back in front of him, as you said, very quickly. But I just want to interject right there. I understand the objector's position that she was the first in time for all of these objections, but specifically as to that Cypre provision being removed, it had nothing to do with her. She was one of 12 objectors that mentioned Cypre. But it was two other objectors, Pritam and Ms. Jean Shepard, that specifically pointed out to the district court, this court's Dennis decision from the summer of 2012 that goes into the intricacies of Cypre and whether or not they can be linked to the benefit. That provision came out of the initial settlement, but not because of any unique efforts by Objector Brown or her counsel. It came about because of those two specific objectors that I just mentioned, as well as the 10 or 11 others that this court will find in supplemental excerpts of record listed 79 through 81. Here's the 800-pound gorilla in the corner of the room. Objector Brown wants to take credit for this panel, this court's prior Groupon decision, sending back down to Judge Sabra to make the Bluetooth findings, and for the parties then to remove the second settlement provision, the second settlement fund, out of the overall settlement. And she says that she presented the arguments that ultimately led to this court's order vacating the settlement, and that Bluetooth concerns were at the heart of this court's reversal of the vacated settlement. But here's the thing. We are not going to find support for that position, that she was the driving force behind that. We are not going to find it in this court's memorandum disposition the first time around. The court, the panel, and Judge Gould, too, around the panel, specifically refused to reach the merits of the objectors' objections. And recall, there were two objectors up there. It was not just Ms. Brown and her attorneys. There was a second objector named Sean Hull, and his attorney, and his attorney at the hearing was Ted Frank. And on reply now, because Objector Brown has said she proffered an extensive argument on Bluetooth and she renewed those arguments on appeal, I went to the appellate briefs, and I would urge this court to also go to the appellate briefs for the prior case, and that's case number 13-55118. And if you will look at Objector Sean Hull's opening brief at pages 20 to 21, and if you will look at his reply brief at pages 3 to 5, you will see extensive argument about Bluetooth and Bluetooth findings being needed to be made, that the district court needs to undertake a search and inquiry if the parties have not given the court the tools with which to value a settlement fund. I mean, that is what this court said in the initial group on memorandum disposition. The parties to the settlement have the ability to provide the district court with the respective values of the settlement fund in between the second and the third agreements. That is true. I believe at the time they thought there was enough in there. I mean, it was an $8.5 million settlement fund. It was just how was that $8.5 million going to be spent? Was it going to be spent on somebody going to the merchant first and being refused and coming back? As you know, it makes a big difference how the mechanics of a distribution of a settlement fund in terms of the value to the individual consumer. Completely agree. And I also agree that in all of our papers regarding the most recent final settlement, we understand that both sides created an improved settlement. It was streamlined. It made it easier for the class members. The money didn't change, but it was streamlined. So, yes, in hindsight, boy, I guess we wish we had done it the first time around. Let me ask you, is there still a reversionary fund in the settlement agreement? No. So what happens if all the money is not collected by the consumers? Let me back up one second. There was never a reversionary fund. What happens in this settlement if not all the money is collected by consumers? The only so-called reversionary, the money would never go back to Groupon. What they, what the other side was referring to as a reversionary feature. You're not answering my question. What happens to the $8.5 million in the settlement fund if it's not distributed to class members? At the time, we had known there were. Wait. What happens? There was never going to be any money left over. In fact, we were going to distribute. What if there is money left over? We were going to distribute. The class was going to be able to take from the fund on a pro-rata basis. So at one point in this journey, we believed we were going to be able to give 130% back to everybody. In other words, for every dollar they had spent on a Groupon voucher, they were actually going to get $1.30. Because of the notice process here and the sheer number, the tens of millions of people that received notice and the four or five million that visited the website, we had nearly 135,000 claims against the fund. That 130% per class member recovery actually was reduced to approximately 80%. So we were still able to give the entire class 80%, 80 cents on the dollar of their recovery. Nothing left over. So now I just want to back up two minutes to the reversionary. What they are saying was reversionary was that because a feature of the initial second settlement fund was that Groupon could apply to the fund for a refund, but only a refund for one purpose, and they could apply to the fund for a refund if they themselves had given cash to a class member. We decided to make it very easy. The class members could either apply to the claim through the claims process for their money, or they could go directly to Groupon. And Groupon would do that, but Groupon could also then recoup what it had just refunded. It was a wash. There was no reversion in the first place. It was just a complete wash. So as I was saying, she has omitted any mention of Objector Sean Hull. It's his briefing that spurred this court to do what it did in the original memorandum disposition. And I also would like the panel to keep in mind that we are dealing here with the abusive discretion standard. Judge Subraw, in the record, made two specific findings. He said Objector Brown did not increase the fund by anything, and under this court's Vizcano v. Microsoft decision, that doesn't entitle her to fees. She also did not provide any unique benefit that helped the class. She did not do anything any more than any other Objector had done. She certainly didn't do it with the removal of the Cypre provision, and she certainly didn't do it when it came to somehow getting the district court to do something back down below. Objector Sean Hull was with her up at the Second Circuit, and this court has case law that says when you've got duplicative arguments, and these weren't even duplicative. I mean, Mr. Hull's argument is the one that carried the day. So to the extent that maybe she cited Bluetooth once or twice in her repellent papers, but she did not address the proportionality argument. She did not address the fact that there had to be a linkage between the purported benefits that the class was getting with class counsel's fee. Mr. Hull did all of that. So whatever she had to say about Bluetooth, I don't even think it necessarily rose to the level of duplicative, but it certainly wasn't the driving force behind the new and improved settlement, which Judge Subraw recognized, and his findings must be deferred to unless they are clearly erroneous, and that means that this court has to believe that it is a clear mistake that he made, and we submit that he did not. Thank you very much. Thank you, counsel. Brown, you have time left. Thank you, Your Honor. I just want to briefly touch base on with respect to the CyPrey award. That is not the basis of why we're up here, but just for your information, the objector, Prudham, which counsel mentioned, actually was denied her fees as well as not having actually made anything unique, in a similar way to how I was denied fees because there were other people. The determination was made by the district court that she didn't make unique arguments. There was a much longer denial than what was provided with respect to mine, but, again, it's the same fundamental thing where there's evidence on the record that I did make at least some unique arguments and I was the first substantive objector on a variety of issues, both at the district court level and then on appeal. My appeal brief was the first appeal brief that was put in. The district court judge took no time to look at what was put into the briefs, to make a determination on what arguments were made by me, what arguments may have been made by Mr. Hull, and essentially what the relative benefit of those arguments were. He simply said that because there were other objectors, I was not entitled to fees. I mean, that just can't be the rule because then all you have to do is get one other person to object and then nobody's entitled to fees and it really would chill people taking time to hire an attorney and have that person put forth extensive effort to brief the court on what the potential problems are with the settlement agreement. Well, I assume that there are other, they've argued that there were other objectors and they didn't apply to the court for fees or what did they do? They did not. Right. No. So nobody else is asking for fees. Right. So, and I think that one of the reasons that other people aren't asking for fees is because they were either pro se at the lower court level and so therefore not entitled to fees for their stuff or it was largely duplicative of the work that my attorneys did. Because if you look at the lower court docket, my attorneys did extensive briefing and it was at docket 56 and it was the first very substantial objection to the case. And then on appeal, we put in the first appeal brief. And so although there are, and we do talk about Bluetooth and although Sean Hall's attorney did as well, the question right now in front of you is not necessarily what was the relative merits. That would be for the district court to determine. The question in front of you is can the district court just say there is another objector so you don't get any money? Who paid the filing fees for the appeal? I did. All right. So I'm out money, quite a bit of money. I flew out here from Minnesota to be here because besides the fact that I would like to be able to pay my attorneys, I think it's an important issue in the general sense for objectors to be able to get their attorney's fees as part of this process. And also that there should be an acknowledgment of when substantial benefit is provided to the court or to the class, even if it isn't from a monetary nature. Now, it's our position that you can't even fully determine how much the first settlement that was appealed, so the one without the cypre, you can't actually adequately determine what the value of that was to the class because the Bluetooth factors weren't, there was no findings on that. And there are several things about that second settlement fund in that settlement that were potentially problematic, including the fact that the Groupon could go to the class, go to that second settlement fund and ask for cash that they paid out. And it wasn't just limited to during the period, the class period, it was, they could also apply to get money that they paid to somebody if they were a class member for Groupons they bought afterwards, which means it wasn't actually a benefit for the class. And so there was at least the potential that some of that money, it could have been a lot of that money, would have ended up back in Groupon's pocket without it actually providing any benefit for the class for the class period. And so to say that it's worth $8.5 million is a stretch, like the evidence isn't there to support that. But even if it was there, the fact that people don't have to go to the merchant and find out that the merchant's not there and sign an affidavit saying the merchant's not going to accept this or the merchant has closed before they can even approach Groupon to get the value from Groupon and from the settlement, that provides a lot of value to the class both on the number of people that are actually going to go through the entire process and be able to take money from it and just like on a regular basis. Just as a person, you're much more likely to go and fill out one form, then fill out a form, go to a business, fill out a second form to say that you didn't do it or that you failed so that you can finally get the money. So for the class, the procedural changes that were made on after it was remanded, that provided a great deal of benefit to the class as well. And a lot of those changes were directly, although the parties might not necessarily agree with this, but they appear to have been directly in response to many of the arguments that I made, that my attorneys made in their appeal briefs. Did you submit a specific amount that you were requesting as fees to the trial court or did you ever get to that point? We did. We submitted, I believe we submitted it on a percentage basis, and we also asked for a percentage of the overall attorney's fees based on the argument that we provided value of at least that amount to the class and then a service fee of $7,500. A service fee for me individually of $7,500 was what the request was at the lower court level. But what we're asking right now essentially is, or what I'm asking for right now is remand to the district court to make the appropriate findings on what the relative balance is of the arguments that I made and actual findings with respect to the value of the original settlement so that we can say how much value was provided to the class based on the work that I did or that my attorneys did. Is there a way to, I mean it seems like going back and valuing all these settlements now is, I mean that's a lot of work in going back. It is. And they probably should have done it the first time around. That's correct. But are you going to have to hire an attorney to then find out that? I mean I would potentially have to hire an attorney or I'd have to do it myself at this point. It's been a long time. The people that I originally worked with have moved on. Has the fund been dispersed? It is my understanding that yes, it probably has. So where would your fees come from? I'm not sure, but I'm sure the court, I'd be asking for the court to put in the judgment and I guess I would have to work on collecting that. So I mean obviously it would be nice if you guys could just enter one, but I don't think that that's within the M&A. So I'm asking for the district court judge to make that determination. All right. Thank you.  Your Honor. And really my question would really go to your friend on the other side as well, and that is if we send this back to the district court to make findings, there could be still another appeal back to us here afterwards. My question is just whether you and the appellate rather have used the court's mediation facilities at all and whether there would be any value to our entering an order to give the parties a chance to mediate if they wanted to. I personally would be open to mediation so that we're not here again in three years. I mean, and maybe we wouldn't be, but it seems in general it seems like sometimes having a third party involved, helping you both see maybe where the weaknesses are in your arguments could be helpful. Okay. Thank you. Thank you. Yes. Would you be adverse to mediation before the Ninth Circuit? No, Your Honor. All right. Thank you. All right. Ferreira v. Brown will be submitted.
judges: Wardlaw, Gould, Piersol